UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

G.J. McELROY, a Minor by            No. 2:07-cv-00086-MCE-EFB
and through his Parents and
Guardians ad Litem, GEORGE
McELROY and GIA McELROY,

        Plaintiffs,

    v.                              **MEMORANDUM AND ORDER**

TRACY UNIFIED SCHOOL DISTRICT,
et al.,

        Defendants.


                    ----oo0oo----


    Plaintiffs G.J. McElroy ("G.J."), a minor, along with his

parents George and Gia McElroy (collectively "Plaintiffs"), bring

this action against sixteen named Defendants for claims arising

under 42 U.S.C. § 1983 ("§ 1983"), 42 U.S.C. § 1988 ("§ 1988),

§ 504 of the Rehabilitation Act or 1973 29 U.S.C. § 794

("§ 504"), the Americans with Disabilities Act at 42 U.S.C.

§ 12132 ("ADA"), and state law claims for assault and battery,

negligence, and intentional infliction of emotional distress.

1

Plaintiffs' claims arise in the context of special education services provided to G.J., and range from claims against private entities and individuals, to allegations levied against Tracy Unified School District and its Board of Education ("TUSD"), the entity responsible for operating the public school where G.J. was eventually placed, and finally to allegations against the San Joaquin County Office of Education ("SJCOE"), which was charged with administering special education programs within the County, and the San Joaquin Local Plan Area 5 ("SELPA"), an entity entrusted with supervising the distribution of federal and statute funds necessary to operate special education programs and services.  Presently before the Court are two Motions to Dismiss brought on behalf of both TUSD and its administrators and specialists on the one hand, and SJCOE, SELPA and its director, Sandee Kludt, on the other.  The Motions are brought, pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] on grounds that the complaint fails to state claims upon which relief can be granted. In addition, both Motions include Rule 12(b)(1) claims brought due to assertions that this Court lacks jurisdiction because Plaintiffs' administrative remedies have not properly been exhausted.  Both Motions also request that the Court strike Plaintiffs' punitive damage requests under Rule 12(f) because such damages are not available against public entity defendants.

///

///

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedures unless otherwise noted.

Finally, both Motions request dismissal under Rule 41(b) given Plaintiffs' alleged failure to timely prosecute this action. Because the two Motions raise similar arguments, they will be considered collectively below, with any differences noted as necessary.

**BACKGROUND**

According to Plaintiffs' Complaint, Defendants provided G.J., an eight year-old boy with Landau Kleffner's Syndrome,[2] educational care between 2002 and 2007 related to his special needs.  Initially, the educational care was provided by various Defendants at G.J.'s residence.  Plaintiffs claim that the home providers furnishing these services improperly grabbed, held, restrained and isolated G.J. during the special education sessions they provided.

G.J. eventually was mainstreamed into public school for the 2005-2006 academic year, and was enrolled in the first grade at the Louis Bohn Elementary School, a school within the boundaries of Defendant Tracy Unified School District.  According to Defendants, the negative challenges arising from G.J.'s behavioral challenges thereafter escalated to the point that the TUSD was forced to obtain an order from the San Joaquin County Superior Court changing G.J.'s educational placement to a more soothing sensory environment where his behavior could be better controlled.

---

[2] Defendants mistakenly believed that G.J. suffered from autism.  Doctors have since diagnosed him with Landau Kleffner's Syndrome which results from "unbridled electrical activity" in the frontal lobe of the brain.

Consequently, in March of 2006, G.J. was removed from his classroom and placed in a tent located within a barricaded portion of the school cafeteria.   The following month, after discovering what had happened, G.J.'s parents removed him from public school and sought injunctive relief.   G.J. did not thereafter return to school, and received no further services from Defendants.

On January 14, 2007, Plaintiffs filed a Complaint with this Court, and on June 8, 2007 the action was stayed until Plaintiffs exhausted their administrative remedies as required by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA").   Approximately one month later, on July 6, 2007, Plaintiffs and Defendant Tracy Unified School District completed the administrative remedies available under the IDEA.   Plaintiffs then filed a First Amended Complaint ("FAC") with this Court on April 14, 2008.   The FAC contains seven causes of action for violation of §§ 1983, 1988, 504 and the ADA, in addition to state law claims alleging assault and battery, negligence, and intentional infliction of emotional distress.

**STANDARD**

**A.   Rule 12(b)(1)**

In moving to dismiss for lack of subject matter jurisdiction pursuant to Rule 12 (b)(1), the challenging party may either make a "facial attack" on the allegations of jurisdiction contained in the complaint or can instead take issue with subject matter jurisdiction on a factual basis ("factual attack").

///

Thornhill Publishing Co. v. General Tel. & Elect. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  If the motion constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true.  Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981); Mortensen, 549 F.2d at 891. If the motion constitutes a factual attack, however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Thornhill, 594 F.2d at 733 (quoting Mortensen, 549 F.2d at 891).

**B.    Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).

///

///

///

5

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give[]" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

///

///

///

///

///

6

### C.   Rule 12(f)

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "(T)he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...."  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)(rev'd on other grounds Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994))(internal citations and quotations omitted).  Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.  Id.

### D.   Rule 41(b)

Under Rule 41(b), a defendant may move for dismissal of an action for failure of the plaintiff to prosecute.  In determining whether to dismiss a case for lack of prosecution, this Court must weigh five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants from undue delay; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.
///

1  In re Eisen, 31 F.3d 1447, 1451 (9th Cir. 1994) (citing Henderson
2  v. Duncan, 779 F.2d 1421, 1423 (9th Cir.1986)).

3

4  **ANALYSIS**

5  **A.  Released Claims**

6

7  Defendants assert that the gravamen of Plaintiffs' claims
8  revolves around the failure by Defendants to provide a free and
9  appropriate education ("FAPE") to G.J., as mandated by the
10 provisions of the IDEA.  Defendants correctly point out that this
11 Court stayed the instant lawsuit, by Order dated June 8, 2007, in
12 order to allow the IDEA administrative proceedings to take their
13 course, and to potentially narrow the issues that had to be be
14 adjudicated.  In the wake of Plaintiffs' resolution of their
15 special education related claims, Defendants now point to the
16 provisions of the release executed to settle those claims.  The
17 language of the release specifically delineates that "all special
18 education and related claims concerning the District's provision
19 of free appropriate public education...." are resolved.  (See
20 Exhibit 3 to TUSD Opening Brief).[3]  The release goes on to
21 provide as follows:

22     "Parents hereby waive any and all special education
       based claims to date against both TUSD and the San
23     Joaquin Office of Education (SJCOE) (i.e, "District").
       This waive of any and all special education based
24     claims encompasses, among others, any appeals to
       federal or state court, any any FAPE and/or IDEIA-based
25     claims, including any such appeals or claims currently
       pending outside the OAH."
26

27     [3] Defendants' request that judicial notice be taken of the
    July 6, 2007 Settlement Agreement and Release is unopposed and is
28  hereby granted.

8

1   Based on this language, both Motions urge the Court to

2   dismiss Plaintiffs' claims under 42 U.S.C. §§ 1983,[4] 504,[5] and

3   the ADA.[6]  TUSD goes on to assert that the release should

4   additionally bar Plaintiffs' common law state claims for assault

5   and battery, negligence, and intentional infliction of emotional

6   distress.  According to Defendants, the incidents identified in

7   Plaintiffs' Complaint, including G.J.'s relegation to a tent

8   erected in the school cafeteria and the fact that he was

9   isolated, ignored, and repeatedly permitted to bang his head

10  against the ground, were all raised in the administrative

11  complaint.  TUSD argues that Plaintiffs' claims "revolve around

12  allegations that [D]efendants failed to properly educate [G.J.],

13  including taking inappropriate actions in attempting to educate

14  him, attempting to provide special educational services to him,

15  and attempting to design an appropriate special education program

16  for him."  (TUSD Opening Brief, 20:14-19).

17  ///

18  ///

19  _____

20      [4] To state a cause of action under 42 U.S.C. § 1983, a
    plaintiff must "demonstrate a deprivation of a right secured by
21  the Constitution or laws of the United States, and that the
    defendant acted under color of state law."  Kirtley v. Rainey,
22  326 F.3d 1088, 1092 (9th Cir. 2003)(citing West v. Atkins, 487
    U.S. 42, 48 (1988)).
23
        [5] Section 504 of the Rehabilitation Act of 1973 prohibits
24  discrimination based on disability by "any program or activity
    receiving Federal financial assistance."  29 U.S.C. § 794(a).
25
        [6] Title II of the ADA, at 42 U.S.C. § 12132, provides that
26  "no qualified individual with a disability shall, by reason of
    such disability, be excluded from participation in or be denied
27  access to or benefit of any services, programs, or activities of
    a public entity, or be subjected to discrimination by any such
28  entity."

Defendants accordingly argue that the claims now asserted through this lawsuit were encompassed within the settlement of the administrative proceedings.

The release, however, is carefully limited to "special education based claims."  Despite Defendants' argument to the contrary, claims under §§ 1983, 504, and the ADA are not special education claims.  G.J.'s § 1983 claim seeks recovery for physical and emotional injuries, including Defendants' alleged failure to prevent G.J. from hurting himself by repeatedly engaging in self-stimulating behavior like knocking his head against the floor, Defendants' alleged use of improper restraints and excessive force causing G.J. to be scratched, bruised, burned and psychologically harmed, and the fact that G.J. was allegedly subject to inappropriate seclusion and humiliation as a result of Defendants' treatment.  FAC, ¶¶ 8, 12, 13, 38, 40.  Similarly, G.J.'s § 504 and ADA claims alleged that as a result of Defendants' conduct, he "suffered severe and permanent physical, emotional and economic injury, including but not limited, to, exacerbation of existing medical and psychological conditions, post-traumatic stress disorder, extreme anxiety, humiliation, embarrassment, ridicule and attorney's fees."  FAC, ¶¶ 70, 77.

On their face, the alleged injuries for which redress is sought under §§ 1983, 504 and the ADA go beyond the scope of any special education claims.  Significantly, too, the IDEA, under whose auspices the administrative proceedings were conducted, does not ordinarily permit the recovery of monetary damages. Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999) (quoting 20 U.S.C. § 1415 (i)(2)(B)(iii)).

Here, Plaintiffs unquestionably seek monetary damages for the statutory violations they identify.  Since such damages are not available under the IDEA, administrative exhaustion of such claims is not even required.  Id., see also Blanchard v. Morton Sch. Dist., 420 F.3d 918, 921 (9th Cir. 2005).

In Blanchard, the mother of an autistic child filed a lawsuit seeking damages for emotional distress caused by the Defendants' actions in providing special education services to her son.  Id. at 919.  The Ninth Circuit reversed the district's court's dismissal of the lawsuit for failing to exhaust administrative remedies under the IDEA, concluding that there were no administrative remedies available for plaintiff's alleged emotional distress which was "completely non-educational" and could not be rectified through the educational remedies available under the IDEA.  Id. at 921-22.  The fact that the Ninth Circuit deemed emotional distress damages to be non-educational and outside the ambit of the IDEA supports the conclusion that damages like that claimed here are also outside the purview of the IDEA, and hence not encompassed by a settlement as to special education claims in an IDEA proceeding.  This finding is underscored by the Ninth Circuit's prior Witte decision, which also found that the remedies available under the IDEA are not suited to allegations of past physical abuse and injury like that alleged here, since "such injuries typically are remedied through an award of monetary damages."  Witte, 197 F.3d at 1276.

///

///

///

11

1    While Defendants cite the decision in <u>Robb v. Bethel Sch.</u>

2  <u>Dist. No. 40</u>, 308 F.3d 1047 (9th Cir. 2002) to support a

3  conclusion to the contrary, that case is distinguishable since,

4  unlike the present matter, it does not claim personal injuries

5  and sought money damages only for educational injuries that

6  remedies under the IDEA may well rectify.  <u>Id</u>. at 1052.

7    Given the foregoing, the Court concludes that Plaintiffs'

8  request for damages under §§ 1983, 504, and the ADA are not

9  subsumed by the terms of the parties' settlement of G.J.'s

10  special education claims.  This same conclusion is equally

11  applicable to Plaintiffs' claims for assault and battery,

12  negligence, and intentional infliction of emotional distress.

13  Consequently, Defendants' request that Plaintiffs' FAC be

14  dismissed on that basis must be denied.

15

16  **B.  Dismissal Under Rule 41(b) for Lack of Prosecution**

17

18    Defendants' second preliminary argument in support of

19  dismissal concerns Plaintiffs' alleged delay in reactivating this

20  lawsuit, through the filing of the instant FAC, once the

21  administrative proceedings for which the action was stayed were

22  concluded on or about July 6, 2007.  Defendants assert that there

23  is absolutely no justification for the nine-month delay that

24  elapsed between that time and the filing of the FAC on April 14,

25  2008.  They consequently urge the Court to dismiss Plaintiffs'

26  lawsuit for delay in prosecution pursuant to Federal Rule of

27  Civil Procedure 41(b).

28  ///

1    As stated above, in determining whether to dismiss is
2  appropriate under Rule 41(b) for lack of prosecution, the Court
3  must weigh a variety of factors, including the public's interest
4  in expeditious resolution of litigation, the court's need to
5  manage its own docket, and the risk of prejudice to defendants
6  from undue delay against countervailing considerations such as
7  the public policy favoring disposition of cases on their merits
8  and the availability of sanctions less drastic than complete
9  dismissal.  In re Eisen, 31 F.3d 1447, 1451 (9th Cir. 1994)
10 (citing Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir.
11 1986)).  Generally, the first two factors weigh in favor of
12 dismissal, while the fourth cuts against dismissal; therefore,
13 the decision boils down to the third and fifth factors; namely,
14 whether defendants have been prejudiced by the delay and whether
15 resort to less drastic options can be made.  See Wanderer v.
16 Johnston, 910 F.2d 652, 656 (9th Cir. 1990).

17    If a plaintiff has come forth with an excuse for delay that
18 is anything but patently frivolous, the burden of proof shifts to
19 the defendant to show at least some actual prejudice.  In re
20 Eisen, 31 F.3d at 1453, citing Nealey v. Transportacion Maritima
21 Mexicana, S. A., 662 F.2d 1275, 1281 (9th Cir. 1980).

22    In considering the risk of prejudice to the defendants, an
23 unreasonable delay in prosecution creates a rebuttable
24 presumption of prejudice.  In re Eisen, 31 F.3d at 1453.  Here,
25 Defendants claim that Plaintiffs waited too long to reactivate
26 this lawsuit, through the filing of the FAC, after administrative
27 proceedings had been completed.
28 ///

1  Plaintiffs point to the fact, however, that the Court's June 8,
2  2007 Order staying this lawsuit pending such completion did not
3  specify a set time within which further action had to be taken.[7]
4  Plaintiffs also claim they needed to measure the efficacy of
5  G.J.'s new placement and medical treatment before deciding how to
6  proceed.   The Court cannot say that these justifications, while
7  arguably weak, are completely frivolous, and absent that
8  determination the burden shifts to Defendants to show some actual
9  prejudice.   Defendants generally argue they were prejudiced by
10 the nearly year-long delay in prosecution but fail to note how
11 this alleged prejudice manifested itself in any meaningful way.
12 Given that failure, the risk of prejudice alone does not weigh in
13 favor of dismissal.

14      Based on the strong policy favoring disposition of a case on
15 its merits and a lack of proof that a delay in prosecution
16 prejudiced the Defendants, Defendants' Rule 41(b) request for
17 dismissal of this action is denied.

18 ///
19 ///
20 ///
21 ///
22 ///
23

24      [7] This distinguishes the present case from Travis v. Folsom
   Cordova Unified Sch. Dist., 2007 WL 1821465 at *2 (E.D. Cal.
25 2007), where the Court ordered that plaintiff file an amended
   complaint within 20 days.  Plaintiffs' failure to abide by a
26 specified deadline in Travis is different from the circumstances
   of the present case, where no specific time to reactivate
27 Plaintiffs' lawsuit following exhaustion of administrative
   remedies was specified.  In addition, Defendants' dismissal
28 request in Travis was unopposed.

                                 14

1      **C.  Exhaustion of Administrative Remedies**

2

3          Defendants next seek to dismiss portions of Plaintiffs' FAC

4      on grounds that it fails to allege compliance with administrative

5      remedies that serve as a prerequisite to maintaining suit.

6      Defendants therefore urge dismissal under Rule 12(b)(1).

7          According to Defendant TUSD, Plaintiffs' state law claims

8      for assault and battery, negligence, and intentional infliction

9      of emotional distress claims should all be dismissed because

10     Plaintiffs have failed to allege compliance with the California

11     Tort Claims Act, California Government Code § 900, et seq.

12     ("CTCA").  The SJCOE Defendants further argue that the ADA claim

13     fails for lack of administrative compliance.

14         Turning first to the state law claims, Defendants are

15     correct that the claims presentation requirements of the CTCA

16     require a plaintiff to have presented a claim for damages against

17     the governmental entity within six months after the cause of

18     action accrues.  Cal. Gov't Code §§ 910, 911.2.  A plaintiff's

19     complaint must expressly allege compliance with this claims

20     presentation requirement, both as to public entities and their

21     employees.  State v. Superior Court (Bodde), 32 Cal. 4th 1234,

22     1243 (2004); Wood v. Riverside Gen'l Hosp., 25 Cal. App. 4th

23     1113, 1119 (1994); Briggs v. Lawrence, 230 Cal. App. 3d 605, 612-

24     13 (1991).  Failure to do so renders the pendent state law claims

25     in a federal lawsuit subject to dismissal.  See Dennis v.

26     Thurman, 959 F. Supp. 1253, 1264 (C.D. Cal. 1997).

27     ///

28     ///

1    With regard to their state law claims, Plaintiffs' FAC
2  undisputedly fails to provide the requisite allegations
3  concerning compliance with the California Tort Claims Act.
4  Consequently those claims must be dismissed.  Although Defendants
5  have requested judicial notice of documents pertaining to
6  Plaintiffs' administrative proceedings, and urge the Court to
7  dismiss as untimely Plaintiffs' claims upon review of those
8  documents, analysis of those documents alone is not dispositive.
9  Plaintiffs must show either compliance with the requisite time
10  period, or some basis for delayed accrual making their claims
11  nonetheless timely.[8]  Plaintiffs shall be afforded the
12  opportunity to do so in an amended pleading.

13    Defendant SJCOE's argument that Plaintiffs' ADA claim fails
14  for lack of tort claim compliance, however, fails.  Title II of
15  the ADA, under which Plaintiffs' claim is brought, has no
16  exhaustion requirement.  <u>See</u> <u>Alberti v. City & County of San</u>
17  <u>Francisco Sheriff's Dep't</u>, 32 F. Supp. 2d 1164, 1170 (N.D. Cal.
18  1998) (Title I of the ADA, applicable to employment
19  discrimination, "requires exhaustion of administrative remedies.
20  Title II, on the other hand, does not.").
21  ///

22

23    [8] The Court recognizes that this lawsuit was initially filed
24  on January 16, 2007, a point in time after Plaintiffs' initial
   tort claim was rejected by Defendants as untimely but before
25  Plaintiffs' leave to present a late claim was presented and
   ultimately denied.  Given the fact that this lawsuit was
26  specifically stayed by the Court's June 8, 2007 Order to permit
   completion of the administrative proceedings, and was not
27  dismissed in its entirety as untimely, the Court is unpersuaded
   by Defendants' contention that Plaintiffs had to refile an
28  amended complaint not later than six months following denial in
   order to avoid dismissal.

1    **D.  Collateral Estoppel**

2

3        Citing to state court documents purporting to indicate that

4    G.J.'s removal from the classroom, and placement in a play tent,

5    had already been examined and approved by the San Joaquin County

6    Superior Court, the TUSD Defendants claim that Plaintiffs are now

7    collaterally estopped from bringing any issue in that regard

8    through this lawsuit.

9        The Court disagrees.  The doctrine of collateral estoppel,

10   or issue preclusion, "prevents relitigation of issues actually

11   litigated and necessarily decided, after a full and fair

12   opportunity for litigation, in a prior proceeding." Shaw v.

13   Hahn, 56 F.3d 1128, 1131 (9th Cir. 1995).  Here, Defendants cite

14   to a Temporary Protective Order signed by a state court judge.[9]

15   Such a preliminary proceeding, which necessarily contemplates

16   further proceedings and the consideration of further evidence and

17   argument, does not provide the requisite full and fair

18   opportunity to litigate that is required to invoke collateral

19   estoppel.  Collateral estoppel is inappropriate if there is any

20   doubt as to whether an issue was fully litigated in a prior

21   proceeding.  See Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of

22   Reading, Penn., 873 F.2d 229, 233 (9th Cir. 1989); see also

23   Durkin v. Shea & Gould, 92 F.3d 1510, 1515 (9th Cir. 1996) ("[i]f

24   there is doubt,... collateral estoppel will not be applied.").

25

26        [9] TUSD has requested that judicial notice be taken of this
     Temporary Protective Order, filed on April 21, 20006 in Tracy
27   Unified Sch. Dist. v. G.J.M, a minor, et al., San Joaquin County
     Superior Court Case No. CV029135.  That request is unopposed and
28   is hereby granted.

17

Moreover, while Defendants offer to provide the Court with all the documentation allegedly presented in the course of the state court proceeding to show that the matter was indeed fully considered, any consideration of such evidence goes beyond the permissible scope of a motion to dismiss.

### E.   Immunities from Prosecution

#### 1.   Eleventh Amendment Immunity

Defendant SJCOE contends that it is immune from liability under §§ 1983, 504 and the ADA by virtue of the immunity from liability established by the Eleventh Amendment of the United States Constitution.  TUSD claims Eleventh Amendment immunity with regard to § 1983.  While both SJCOE and TUSD claim immunity with regard to the above claims on behalf of their associated individual Defendants as well, to the extent such individuals are sued in their official capacities, neither SJCOE or TUSD specifically address whether Eleventh Amendment immunity also applies to the pendant state law claims asserted by Plaintiffs.

The Eleventh Amendment bars claims in federal court against non-consenting states and their agencies.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100-02 (1984).  Suits against state officials in their official capacities are also barred by the Eleventh Amendment, where, as here, the relief sought is retrospective or compensatory in nature.  Han v. U.S. Dep't of Justice, 45 F.3d 333, 338 (9th Cir. 2000).  As a school district, TUSD is a state agency for purposes of the Eleventh Amendment. ///

1    <u>Belanger v. Madera Unif. Sch. Dist.</u>, 963 F.2d 248, 250-54 (9th

2    Cir. 2002).  Moreover, County Offices of Education, like

3    Defendant SCOE, are also agents of the state for the operation of

4    school districts, and hence are also entitled to Eleventh

5    Amendment immunity.  <u>Eaglesmith v. Ward</u>, 73 F.3d 857, 860 (9th

6    Cir. 1996).

7         As indicated above, Defendant SJCOE argues that it is

8    entitled to Eleventh Amendment immunity as to Plaintiffs' claims

9    for §§ 1983, 504 and the ADA, but does not analyze the remainder

10   of the claims asserted against it with regard to the Eleventh

11   Amendment's scope.  Additionally, while Defendant TUSD briefly

12   mention Eleventh Amendment immunity in the context of Plaintiffs'

13   § 1983 claim, they do not specifically advocate extending the

14   immunity on a broader basis to other causes of action.  Finally,

15   although Defendant SJCOE does argue that the immunity afforded by

16   the Eleventh Amendment should encompass both its associated

17   special education local plan area (Defendant SELPA) and the

18   SELPA's Director, Defendant Kludt, TUSD's papers again do not

19   assert Eleventh Amendment immunity on a more comprehensive basis

20   with regard to the individual Defendants associated with the TUSD.

21         Despite the fact that Defendants have not consistently

22   invoked a far-reaching application of the Eleventh Amendment as

23   set forth above, the Court believes it is appropriate to address

24   the entire issue on a sua sponte basis.  <u>See</u> <u>In re Jackson</u>,

25   184 F.3d 1046, 1048 (9th Cir. 1999) ("Eleventh Amendment

26   sovereign immunity limits the jurisdiction of the federal courts

27   and can be raised by a party at any time during judicial

28   proceedings or by the court sua sponte.").

19

1    First, Plaintiffs concede that SJCOE is a state agency for

2    Eleventh Amendment purposes, and therefore is entitled to

3    immunity under <u>Eaglesmith</u>.  (Pls.' Opp. to SJCOE Mot., 15:14-16).

4    Plaintiffs further concede that the Eleventh Amendment bars

5    actions for damages against state officials sued in their

6    official capacities.  <u>Id</u>. at 16:1-2.  With regard to Defendant

7    SELPA, however, Plaintiffs assert that there is no authority for

8    the proposition that it too is entitled to Eleventh Amendment

9    immunity.  The Court is unpersuaded by this contention.

10    There is no legal rationale or policy distinction for

11    treating a special education local plan area any differently than

12    either a school district or county office of education, both of

13    which are unquestionably entitled to Eleventh Amendment immunity.

14    Plaintiffs' FAC itself describes Defendant SELPA as a "California

15    governmental entity which supervises, oversees and distributes

16    federal and state funds to [Defendant TUSD]."  FAC, ¶ 27.  Like

17    both a school district and county office of education, the SELPA

18    also acts as "an agent of the state for the operation of the

19    school system."  <u>Eaglesmith v. Ward</u>, 73 F.3d at 860.  Since

20    Plaintiffs' only argument to avoid immunity as to their claims

21    against Defendant Kludt, to the extent she is being sued in her

22    official capacity, is that the SELPA for which she is Director

23    does not come within the purview of the Eleventh Amendment,

24    Plaintiffs' argument for inclusion of Defendant Kludt in this

25    lawsuit on that basis also fails.

26    ///

27    ///

28    ///

20

1    Eleventh Amendment immunity applies equally to Defendant

2  TUSD, and to its employees being sued in their official

3  capacities.  Therefore, since both TUSD, SJCOE and SELPA, along

4  with their employees acting in their official capacities, come

5  within the purview of Eleventh Amendment immunity, the next issue

6  the Court must address is the claims to which such immunity

7  affixes.  Eleventh Amendment immunity applies to claims brought

8  under § 1983, the Reconstruction-era civil rights statute

9  designed to deter and compensate for violations of federal rights

10  committed by "persons acting under color of state law."  <u>See</u>

11  <u>Howlett v. Rose</u>, 496 U.S. 356, 358 (1990).  Immunity does not

12  attach, however, to discrimination claims under § 504, since a

13  state agency's receipt of federal financial assistance under the

14  Rehabilitation Act constitutes a waiver its sovereign immunity

15  against claims brought under the Act.  <u>Pugliese v. Dillenberg</u>,

16  346 F.3d 937, 938 (9th Cir. 2003).  In addition, Title II of the

17  ADA, upon which Plaintiffs' ADA claim is premised, validly

18  abrogates state sovereign immunity insofar as it creates a

19  private cause of action for damages against the states for

20  conduct that violates the Fourteenth Amendment of the United

21  States Constitution.  <u>U.S. v. Georgia</u>, 546 U.S. 151, 159 (2006);

22  <u>Lovell v. Chandler</u>, 303 F.3d 1039, 1050-51 (9th Cir. 2002).

23    With regard to Defendants' claims premised on alleged

24  violations of California law, the Eleventh Amendment "precludes

25  the adjudication of pendent state law claims against

26  nonconsenting state defendants in federal courts.  <u>Cholla Ready</u>

27  <u>Mix, Inc. v. Civish</u>, 382 F.3d 969, 973 (9th Cir. 2004).

28  ///

1       Application of these principles to the present case leads to

2   the conclusion that Plaintiffs' claims for violations of § 1983

3   (Third Claim), § 1988 (Fourth Claim),[10] Negligence (Second

4   Claim), and Intentional Infliction of Emotional Distress (Seventh

5   Claim)[11] must all be dismissed, pursuant to Eleventh Amendment

6   immunity, as against TUSD, SJCOE, SELPA, and the individually

7   named Defendants to the extent they are sued in their official

8   capacities.

9       Plaintiffs claim that they are nonetheless entitled to sue

10  the individually named Defendants in their individual, as opposed

11  to official capacities.  Despite the fact that the body of the

12  FAC appears to refer only to actions being taken by said

13  Defendants in the course of their employment with the public

14  entity Defendants, Plaintiffs point to the caption of the FAC as

15  indicating that the individually named Defendants are in fact

16  being sued in both their official and individual capacities.

17  ///

18  ///

19

20     [10] Section 1988 allows a prevailing party under one of
    several federal civil rights statutes, including § 1983, to

21  recover attorney fees.  42 U.S.C. § 1988(b).  Hence the viability
    of § 1988 necessarily depends on the viability of its enabling

22  statute, § 1983, and if liability under § 1983 is precluded by
    the Eleventh Amendment, then relief under § 1988 must be

23  dismissed in any event because § 1988 does not independently
    create a federal cause of action.  <u>Moore v. Alameda County</u>, 411

24  U.S. 693, 702 n.17 (1973).  Plaintiffs in fact concede that no
    independent cause of action is created by § 1988.  <u>See</u> Pls. Opp.

25  to SJCOE Mot., p. 23, fn. 15.

26     [11] The Court notes that the caption to the FAC itself, as
    well as the prayer, refer to an additional claim for relief not

27  found in the body of the FAC.  Consequently, throughout this
    Order the Court relies on the proper claim numbering used within

28  the body of the FAC rather than on either the erroneous numbering
    set forth in the caption and prayer.

As Defendants point out, not only is it difficult to ascertain from the allegations of the FAC itself whether acts taken by the individual Defendants were within their official or individual capacities, it is also all but impossible to determine the particular role of said individual Defendants in the allegedly wrongful conduct identified by Plaintiffs. Consequently, given Plaintiffs' pleadings as they presently stand, the Court cannot ascertain whether immunity under the Eleventh Amendment attaches to the individual Defendants or not.

## 2.   Discretionary Immunity

As a second grounds for immunity, the individual Defendants cite to the provisions of California Government Code § 820.2, which makes discretionary acts of a public employee immune from liability:

> "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

According to Defendants, Plaintiffs' complaints about G.J.'s educational programming, including his removal from the classroom and his alternative placement in a tent in the cafeteria, involve the exercise of discretion and consequently are immune from liability under § 820.2. As Plaintiffs point out, however, the problem with this argument is that the immunity afforded by § 820.2 applies to "basic policy decisions" but not to "ministerial implementation of that basic policy."

///

23

1   See <u>Johnson v. State</u>, 69 Cal. 2d 782, 796 (1968); <u>see also</u>

2   <u>Caldwell v. Montoya</u>, 10 Cal. 4th 972, 981 (1995) ("[T]here is no

3   basis for immunizing lower-level, or 'ministerial,' decisions

4   that merely implement a basic policy already formulated.").

5   "Immune discretionary acts involve planning and policy making

6   whereas unprotected ministerial acts involve operational

7   functions of government." <u>Doe 1 v. City of Murrieta</u>, 102 Cal.

8   App. 4th 899, 911 (2002).  Moreover, immunity is limited to

9   specific conduct that involves "an actual exercise of discretion-

10  a conscious balancing of risks and advantages." <u>Bell v. State of</u>

11  <u>California</u>, 63 Cal. App. 4th 919, 929 (1998).  "[T]o avail itself

12  of the discretionary immunity provided by section 820.2, a public

13  entity must prove that the employee, in deciding to perform (or

14  not to perform) the act which led to plaintiff's injury,

15  consciously exercised discretion in the sense of assuming certain

16  risks in order to gain other policy objectives." <u>Lopez v.</u>

17  <u>Southern Cal. Rapid Transit Dist.</u>, 40 Cal. 3d 780, 794 (1985).

18  There is no immunity "if the injury.... results, not from the

19  employee's 'exercise of discretion vested in him' to undertake

20  the act, but from his negligence in performing it after having

21  made the discretionary decision to do so." <u>McCorkle v. City of</u>

22  <u>Los Angeles</u>, 70 Cal. 2d 252, 261 (1969).

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    Although Plaintiffs properly point out that liability is the

2  rule, rather than the exception (see Ramos v. County of Madera,

3  4 Cal. 3d 685, 692 (1971), and that in order to qualify for

4  immunity the individual Defendants must prove that they

5  "consciously exercised discretion in the sense of assuming

6  certain risks in order to gain other policy objectives," (Lopez,

7  40 Cal. 3d at 794), the paucity of factual detail in terms of

8  what particular Defendant was involved in what specific actions

9  involving Plaintiffs prevents the Court from determining whether

10 the  prerequisites for discretionary immunity have been

11 satisfied.   The Court will revisit the issue of discretionary

12 immunity, as appropriate, once further information is before it.

13    The Court rejects Defendants' suggestion that discretionary

14 immunity is apparent on the information already contained in the

15 FAC.  The cases Defendants cite in support of that proposition

16 are distinguishable.  Although this Court did find that a school

17 district's physical restraints on a student were not actionable

18 in Alex G. v. Board of Trustees of Davis Joint Unified High Sch.

19 Dist., 387 F. Supp. 2d 1119 (E.D. Cal. 2005, that case does not

20 deal with discretionary immunity under § 820.2, but instead

21 analyzes whether the school district, in implementing restraint

22 measures adopted pursuant to an emergency plan to protect the

23 student in question and others from physical harm, displayed bad

24 faith, gross misjudgment or deliberate indifference for purposes

25 of establishing a violation of § 504 of the Rehabilitation Act.

26 Additionally, unlike the present matter, Alex G. was decided on

27 summary judgment rather than pursuant to a motion to dismiss.

28 ///

1        While <u>Annamaria M. v. Napa Valley Unified Sch. Dist.</u>, 2006

2   WL 1525733 (N.D. Cal. 2006) does at least address discretionary

3   immunity under § 820.2, that case considers whether the decision

4   to take disciplinary action against students who were sexually

5   harassing the plaintiff involved the exercise of discretion under

6   the statute.  <u>Id</u>. at *14.  Although decisions to impose

7   discipline are well recognized as being discretionary in nature

8   (see <u>Kemmerer v. County of Fresno</u>, 200 Cal. App. 3d 1426, 1437-39

9   (1988); <u>Nicole M. v. Martinez Unified Sch. Dist.</u>, 964 F. Supp.

10  1369, 1389-90 (N.D. Cal. 1997)), here we have allegations that

11  Plaintiff G.J. was subject to deliberate ridicule and humiliation

12  and further suffered physical harm due to Defendants' alleged

13  failure to prevent him from engaging in self-destructive

14  behavior.  Those allegations go well beyond the alleged failure

15  to discipline confronted in <u>Annamaria M.</u>

16

17              **3.  Qualified Immunity**

18

19       In addition to arguing her entitlement to discretionary

20  immunity under § 820.2, Defendant Kludt asserts that she is also

21  entitled to assert qualified immunity as a defense.  The purpose

22  of qualified immunity is to protect public officials from "undue

23  interference with their duties and from potentially disabling

24  threats of liability."  <u>Elder v. Holloway</u>, 510 U.S. 510, 514

25  (1984).

26  ///

27  ///

28  ///

26

Like immunity under § 820.2, however, the concept of qualified immunity protects government officials performing discretionary functions, except with the qualification that the conduct at issue must not violate clearly established statutory of constitutional rights of which a reasonable person should have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The FAC's failure to allege just what Defendant Kludt did makes it impossible to say as a matter of law whether she is entitled to qualified immunity, just as it is impossible on the basis of Plaintiffs' current allegations to determine the extent to which discretionary immunity is available, and to which particular Defendants that immunity may accrue.

**F.   Statute of Limitations**

Defendants take issue with Plaintiffs' state law claims on statute of limitations grounds, claiming that the FAC references facts going back to 2002, whereas the limitations period applicable to Plaintiffs' claims for assault and battery, negligence and intentional infliction of emotional distress is two years under California Code of Civil Procedure § 335.1. Defendants accordingly argue that any conduct predating January 16, 2005, or two years prior to the initial filing of this lawsuit on January 16, 2007, is time barred. Plaintiffs, on the other hand, contend that limitations period may be subject to equitable tolling, a determination which cannot be made on the face of the pleadings.

///

See <u>Kiseskey v. Carpenters' Trust for So. Cal.</u>, 144 Cal. App. 3d
222, 232 (1983) (when a cause of action accrues is "a question of
fact for the trier of fact, not for determination at the
[pleadings] stage").  Given the nature of G.J.'s disability, the
Court agrees that some of the conduct at issue may not have been
immediately discoverable.  A negligence cause of action does not
accrue, for example, until a plaintiff actually discovers his or
her injury and its negligent cause, or until the plaintiff could
have discovered such injury and cause through the exercise of
reasonable diligence.  <u>See</u> <u>Siegel v. Anderson Homes, Inc.</u>, 118
Cal. App. 4th 994, 1013 (2004).  Consequently, the Court declines
to consider Defendants' limitation arguments at this juncture of
the lawsuit.

**G.   Failure to Satisfy Pleading Requirements**

The Court has previously dismissed Plaintiffs' allegations
against TUSD, SJCOE, SELPA and the individually named Defendants,
acting in their official capacity, with respect to their claims
for violations of § 1983 and 1988 due to the immunity from
prosecution afforded by the Eleventh Amendment.  The Court has
further found that the scope of either discretionary or qualified
immunity as to the individual Defendants cannot be assessed at
this point given the lack of factual allegations in the FAC to
illuminate the role of the various individual Defendants in the
conduct alleged by Plaintiffs in their lawsuit.

///

///

28

The TUSD individual Defendants (Franco, Skulina, Flynn-Hopple and Dopp) move to dismiss Plaintiffs' claims for assault and battery, negligence, and intentional infliction of emotional distress given that failure pursuant to Rule 12(b)(6).  SJCOE, with regard to Defendant Kludt, makes the same arguments with regard to both the aforementioned state law claims as well as §§ 1983 and 504.

Although federal courts adhere to notice pleading standards, and do not require any great detail within the body of a complaint as to specific facts being alleged, the Complaint must nonetheless at least give fair notice to the individual Defendants of the acts pled against them with enough particularity to allow said Defendants to meaningfully respond. See Ursino v. Hagarty, 2007 WL 738951 at *2 (E.D. Cal. 2007); Claiborne v. California Dept. of Corrections, 2007 WL 136009 at *1 (E.D. Cal. 2007).

It cannot be determined from the FAC which Defendants were involved in which incidents cited by Plaintiffs as factual support for their lawsuit.  Plaintiffs have named Defendants Kludt, Skulina, Dopp and Flynn-Hopple ("individual Defendants") as Defendants in their assault and battery claim, for example, but fail to specify just how those Defendants were involved, stating only that "Defendants and each of them" were involved in assaulting and battering G.J. over a period of some three-and-a-half years.  FAC, ¶ 40.

///

///

///

1    As Defendants point out, it would appear extremely likely that

2    TUSD Director of Special Education (Defendant Flynn-Hopple) of

3    TUSD Program Specialist (Defendant Skulina) would have even had

4    direct interaction with G.J., let alone involvement to the point

5    of having committed assault and battery.  The individual

6    Defendants are not given "fair notice" of the claims alleged

7    against if Plaintiffs fail to describe who did what, and when.

8    See Grohal v. Stauffer Chemical Co., Inc., 385 F. Supp. 1267,

9    1268-69 (N.D. Cal. 1974).

10        Moreover, and in any event, while a claim for liability

11   against public officials acting in their individual capacity may

12   be asserted under § 1983, no such individual liability is

13   available under § 504.  See Calloway v. Boro of Glassboro Dept.

14   of Police, 89 F. Supp. 2d 545, 557 (D.N.J. 2000) (holding that

15   the weight of authority establishes that individual defendants

16   cannot be liable either for violations of § 504 or Title II of

17   the ADA); Campos v. San Francisco State Univ., 1999 WL 1201809 at

18   *10 (N.D. Cal. 1998).

19        The individual Defendants' Motions to Dismiss Plaintiffs'

20   claims for assault and battery, negligence, violations of §§ 1983

21   and 504, and intentional infliction of emotional distress will

22   accordingly be granted for failure to state a viable claims in

23   contravention of Rule 12(b)(6).  Plaintiffs will be afforded

24   leave to amend, except with regard to any allegation of

25   individual liability under § 504.

26   ///

27   ///

28   ///

30

1    **H.   Punitive Damages**

2

3         Defendants request that Plaintiffs' request for punitive

4    damages as to the Second, Third, Fifth and Sixth Claims (for

5    negligence, and violations of §§ 1983, 504 and the ADA,

6    respectively) be stricken as improper.  Plaintiffs concede that

7    they are not entitled to punitive damages for their §§ 1983, 504

8    and ADA claims, and further concede that punitive damages cannot

9    be had as to their state law claims against either the TUSD, the

10   SJCOE, and SELPA.  (See Pls.' Opp. to TUSD Motion, p. 26, fn. 21;

11   Pls.' Opp. to SJCOE Mot., p. 23, fn. 15).  That non-opposition

12   comports with applicable case law.  See Nelson v. Giurbino, 395

13   F. Supp. 2d 946, 956 (S.D. Cal. 2005) (punitive damages normally

14   inapplicable to § 1983 claims); Barnes v. Gorman, 536 U.S. 181,

15   189 (2002) (no punitive damages for § 504 and ADA claims); Cal.

16   Gov. Code § 818 (providing that exemplary damages are not

17   recoverable against public entity defendants).  Defendants'

18   Motions to Strike punitive damages from the prayers attendant to

19   the Second, Third and Fifth, Sixth and Seventh Claims, with

20   respect to Defendants TUSD, SJCOE and SELPA are therefore

21   granted.

22        While the individual Defendants also request that punitive

23   damages allegations be stricken as against them, the Court can do

24   so as a matter of law only as to the § 504 and negligence claims.

25   See Barnes v. Gorman, supra (no punitive damages recoverable

26   under § 504); Ebaugh v. Rabkin, 22 Cal. App. 2d 891 (1972)

27   (punitive damages not available for negligence claims).

28   ///

1 With regard to the remaining claims against the individual

2 Defendants for assault and battery, liability under § 1983, and

3 intentional infliction of emotional distress, as stated above

4 those claims have already been dismissed, with leave to amend,

5 under Rule 12(b)(6).   Any further inquiry as to the propriety of

6 punitive damages will have to wait until if and when an amended

7 pleading is filed.

8

9                              **CONCLUSION**

10

11      As set forth above, Defendants' Motions are GRANTED in part

12 and DENIED in part.[12]   Defendants' request that certain claims be

13 dismissed on grounds that settlement of Plaintiffs' IDEA claims

14 encompassed the claims set forth in this lawsuit is DENIED.

15 Defendants' request that Plaintiffs' complaint be dismissed for

16 lack of prosecution under Rule 41(b) is also DENIED.   Defendants'

17 Motion to Dismiss the First, Second, and Seventh Claims for

18 Relief, for assault and battery, negligence, and intentional

19 infliction of emotional distress, is GRANTED, with leave to

20 amend, for failure to allege compliance with the California Tort

21 Claims Act.   The Court rejects Defendants' contention that

22 Plaintiffs are collaterally estopped from bringing this lawsuit

23 because of prior proceedings adjudicated in state court, and

24 DENIES Defendants' Motion to Dismiss brought on that ground.

25 ///

26

27      [12] Because oral argument will not be of material assistance,
the Court orders this matter submitted on the briefs.   E.D. Cal.
28 Local Rule 78-230(h).

32

1    With respect to claimed immunities from prosecution, the

2   Court finds that Eleventh Amendment immunity bars Plaintiffs'

3   Second, Third, and Fourth Claims for Relief against Defendants

4   TUSD, SJCOE, and SELPA, and consequently grants Defendants'

5   Motion to Dismiss said claims on that basis.  With respect to the

6   individually named Defendants, the dearth of factual allegations

7   contained within the FAC made assessment of any immunity

8   attaching to those Defendants impossible.

9    Given the failure of the FAC to address the role of the

10   various individual Defendants in the factual allegations levied

11   by Plaintiffs, said Defendants' Motion to Dismiss the First,

12   Second, Third and Seventh Claims for Relief are GRANTED, with

13   leave to amend, for failure to state a viable cause of action

14   under Rule 12(b)(6).  The individual Defendants' Motion to

15   Dismiss the Fifth Cause of Action, for violation of § 504, is

16   dismissed without leave to amend.

17    Finally, Defendants' Motion to Strike the punitive damages

18   allegations from Plaintiffs' FAC is GRANTED, without leave to

19   amend, except for Plaintiffs' request for such damages as to

20   their claims for assault and battery, liability under § 1983, and

21   intentional infliction of emotional distress, with respect to

22   which leave to amend will be afforded as to Plaintiffs' claims

23   against the individual Defendants.

24   ///

25   ///

26   ///

27   ///

28   ///

1        Plaintiffs are directed to file a Second Amended Complaint,

2   should they choose to do so, not later than twenty (20) days

3   following the date of this order.

4        IT IS SO ORDERED.

5   Dated: November 21, 2008

6

7   _____

8   MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34